**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**AARON FARROW,**

  Petitioner,

v.                                                              Civil Action No. **3:20cv302**

**JUSTIN S. ANDREWS,**
*Warden,*

  Respondent.

**MEMORANDUM OPINION**

Aaron Farrow, a federal inmate proceeding with counsel, submitted a 28 U.S.C. § 2241

Petition. ("§ 2241 Petition," ECF No. 13.)[1]  The Government filed a Motion to Dismiss. (ECF

No. 15.)  Farrow filed a response in Opposition, (ECF No. 17), and Warden Justin S. Andrews

replied. (ECF No. 18.)  Thereafter, Farrow filed a supplemental reply with a copy of his

sentencing transcript from the Court of Common Pleas in Allegheny County, Pennsylvania.

(ECF No. 19.)  The matter is ripe for disposition.  For the reasons set forth below, the Court will

grant in part and deny in part the United States' Motion to Dismiss.

---

[1] The statute provides, in pertinent part:

> (c) The writ of habeas corpus shall not extend to a prisoner unless--
> (1) He [or she] is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
> (2) He [or she] is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
> (3) He [or she] is in custody in violation of the Constitution or laws or treaties of the United States . . . .

28 U.S.C. § 2241(c)(1)–(3).

## I.  Procedural History and Summary of Farrow's Claims

On June 12, 2013, the United States District Court for the Western District of Pennsylvania sentenced Farrow for three counts: (1) conspiracy to distribute and possess with intent to distribute less than fifty kilograms of marijuana, in violation of 21 U.S.C. § 846, (Count One); (2) conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951, (Count Three); and, (3) using and carrying a firearm during and relation to a drug trafficking and violent crime, in violation of 18 U.S.C. § 924(c),[2] (Count Five).  (§ 2241 Pet. Ex. C, 1, ECF No. 13–3.) The Sentencing Court imposed a total prison term of 70 months, compromised of "28 months of imprisonment at each of Counts 1 and 3 . . . to be concurrently served and 42 months imprisonment at count 5 to be consecutively served to the sentence imposed at counts one and three."  (*Id.* 2.)  The Sentencing Court continued, "8 months of the 28-month term of imprisonment imposed at each of counts 1 and 3 . . . shall be concurrently served with any

---

[2] This case does not address, nor could it through a § 2241 Petition, whether conspiracy to commit Hobbs Act Robbery constitutes a crime of violence necessary to sustain a § 924(c) conviction.  *See United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (determining that conspiracy to commit Hobbs Act robbery fails to satisfy the force clause contained in § 924(c)).

In *Simms*, the defendant pled guilty to conspiracy to commit Hobbs Act robbery and to brandishing a firearm during and in relation to a "crime of violence," but later challenged his brandishing conviction on the theory that Hobbs Act conspiracy could not be considered a "crime of violence" under 18 U.S.C. § 924(c)(3).  914 F.3d at 232–33.  Initially, the parties and the Fourth Circuit agreed that,

> conspiracy to commit Hobbs Act robbery—does not categorically qualify as a crime of violence under the [Force Clause], as the United States now concedes. This is so because to convict a defendant of this offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act.  Such an agreement does not invariably require the actual, attempted, or threatened use of physical force.

*Id.* at 233–34 (citations omitted).  Thereafter, the Fourth Circuit concluded that the Residual Clause of § 924(c) is void for vagueness.  *Id.* at 236; *accord United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), (holding that "§ 924(c)(3)(B) is unconstitutionally vague").

sentence imposed with respect to defendant's pending state court charges at criminal action no. 9699-2012." (*Id.*)

After being sentenced in federal court, the Court of Common Pleas in Allegheny County, Pennsylvania sentenced Farrow "to a minimum period of six years and eight months imprisonment and a maximum period of 14 years imprisonment for the aggravated assault conviction." (Mem. Supp. Resp't's Mot. Dismiss 2, ECF No. 16.) The Allegheny County court required that Farrow's state sentence "run concurrent with the Federal sentence imposed at CR#10-224." (§ 2241 Pet. Ex. H, ECF No. 13–8.) The state court order further specified that the state sentence "shall commence 06/17/2013," five days after the federal court sentenced Farrow. (*Id.*) The state court order also credited Farrow with 1007 days of prior custody time from the date of his arrest on September 15, 2010 until June 17, 2013, the date of his state sentence, while confined in Allegheny County Jail. (*Id.*)

On March 7, 2018, Pennsylvania paroled Farrow from his state sentence. (§ 2241 Pet. Ex. D, ECF No. 13–4.) One April 13, 2018, the Bureau of Prisons ("BOP") assumed custody of Farrow. (§ 2241 Pet. Ex. I, ECF No. 13–9.) The BOP lists Farrow's release date as July 31, 2022, *see* Bureau of Prisons, *Fed. Inmate Search*, https://www.bop.gov/inmateloc/, though records attached to the United States' Memorandum in Support of its Motion to Dismiss show Farrow's projected statutory release date as June 27, 2022. (Mem. Supp. Resp't's Mot. Dismiss Ex. 1, ECF No. 16–1.)

In his § 2241 Petition, Farrows seeks relief based upon the following claims:

Claim One:    "At federal sentencing, defendant Farrow was awarded credit for presentence time served in federal U.S. Marshal custody, which was 19 months." (§ 2241 Pet. 7.)

Claim Two:    "Judge Flowers Conti Imposed an 8 month concurrent federal sentence to that of the state sentence, at Farrow's federal sentencing on 6/12/2013." (*Id.* at 8.)

3

Claim Three:  "The Federal BOP at FCI Loretto has not awarded Farrow credit for either the 19 months in federal Marshal custody prior to his federal sentencing, or the 8 month concurrent federal sentence to that of the state sentence." (*Id.*)

As relief, Farrow requests that the Court

order the BOP to re-compute [his] release dates, following Judge Conti's sentencing, and award Farrow credit for the 19 months presentencing time he served in U.S. Marshal custody which has not yet been credited to him either at the state or federal level, as well as the credit for the 8 month concurrent term Farrow served while completing his state sentence (Exhibit C). This computation should give Farrow a new release date of 08/07/2020, with the home detention eligibility of 02/07/2020.

(§ 2241 Pet. 9.)

In the Motion to Dismiss, the United States avers that Farrow "raises two challenges to BOP's computation of his sentence. Neither contention has merit, and [his] petition for writ of habeas corpus should therefore be dismissed for failure to state a claim upon which relief may be granted." (Mem. Supp. Resp't's Mot. Dismiss 6, ECF No. 16.)

## II.  Standard of Review

Prisoners may properly challenge the execution or computation of a federal prison sentence through a petition for habeas corpus brought pursuant to 28 U.S.C. § 2241. *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989) (holding that "[a] claim for credit against a sentence attacks the computation and execution of the sentence rather than the sentence itself [and] must be sought under 28 U.S.C. § 2241"). Section 2241 authorizes a federal court to issue a writ of habeas corpus to state and federal prisoners who are "in custody in violation of the Constitution of laws or treaties of the United States." 28 U.S.C. § 2241. More specifically, a § 2241 habeas petition "challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention, and prison conditions." *Gonzalez–Martinez v. Drew*, No. 8:11–cv–00437, 2011 WL 6982247, at *4 n.1 (D.S.C. Dec. 16,

4

2011) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)); *see also In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) ("Attacks on the execution of a sentence are properly raised in a § 2241 petition."). A prisoner must file a § 2241 habeas petition in the federal district where he or she remains in custody.[3] *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2006).

Before properly bringing a § 2241 habeas petition in federal district court, a petitioner must exhaust his or her administrative remedies. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *Pelissero v. Thompson*, 170 F.3d 442, 445 (4th Cir. 1999). A reviewing court may only excuse a petitioner's failure to exhaust upon a showing of cause and prejudice. *Carmona v. United State Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). "Exhaustion of administrative remedies serves two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (discussing Prisoner Litigation Reform Act, 42 U.S.C. § 1997e *et al*). First, "exhaustion protects administrative authority [by] giv[ing] an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is [hauled] into federal court, and it discourages disregard of [the agency's procedures]." *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)) (internal quotations omitted). Second, exhaustion helps promote efficiency by allowing the resolution of claims in a quicker, more economical fashion before filing in federal court.[4] *Id.*

---

[3] The Parties do not contest this Court's jurisdiction to resolve the instant § 2241 Petition. The BOP houses Farrow in Petersburg Low FCI, rendering jurisdiction proper in the Eastern District of Virginia.

[4] The Parties do not dispute that Farrow has exhausted his administrative remedies by seeking relief from the BOP. The record establishes that on September 14, 2018 the BOP "partially granted" Farrow's appeal of his sentence computation. (§ 2241 Pet. Ex. F, ECF No. 13–6.) The BOP stated that it "computed [Farrow's sentence] as commencing on July 8, 2017." (*Id.*) July 8, 2017 is eight months prior to March 7, 2018, the day on which Pennsylvania paroled Farrow. As such, the Court may properly turn to the merits of his § 2241 Petition.

As an initial matter, the Attorney General administers federal sentences through the

BOP. *Wilson*, 503 U.S. at 335. The BOP conducts such administration according to 18 U.S.C.

§ 3585, which states:

> **(a) Commencement of sentence.**—A sentence to a term of imprisonment
> commences on the date the defendant is received in custody awaiting
> transportation to, or arrives voluntarily to commence service of sentence at, the
> official detention facility at which the sentence is to he served.
> **(b) Credit for prior custody.**—A defendant shall he given credit toward the
> service of a term of imprisonment for any time he has spent in official
> detention prior to the date the sentence commences—
>> **(1)** as a result of the offense for which the sentence was imposed; or
>> **(2)** as a result of any other charge for which the defendant was arrested
>> after the commission of the offense for which the sentence was imposed;
>> that has not been credited against another sentence.

18 U.S.C. § 3585.

While Title 18 U.S.C. § 3585(a) governs the date a federal sentence commences, a

federal sentence cannot commence prior to its pronouncement, even if made concurrent with a

sentence already being served. *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007)

(finding that defendant was not entitled to credit against subsequently imposed sentence for time

served which had previously been credited against first-imposed sentence, despite second

sentencing court's order that sentences at issue be served concurrently); *Coloma v. Holder*, 445

F.3d 1282, 1285–86 (11th Cir. 2006) (finding that petitioner's sentence on second conviction that

was ordered to run concurrently with his sentence on related first conviction, was not retroactive

to the beginning of the first sentence).

The second part of the statute, § 3585(b), governs the BOP's calculation of a federal

prisoner's sentence. The Supreme Court has held that 18 U.S.C. § 3585(b) prohibits double-

crediting, *i.e.* awarding credit for presentence time already credited against another sentence.

*Wilson*, 503 U.S. at 331–32, 337. However, notwithstanding 18 U.S.C. § 3585(b),

> the Fifth and Seventh Circuits indicated that a petitioner was entitled to time spent
> in *presentence* State custody that was attributable to the federal offense even if the

6

petitioner was given credit on his State sentence for that period of time. *See Kayfez v. Gasele*, 993 F.2d 1288, 1290 (7th Cir. 1993) (even though defendant received state credit for his presentence custody, the court found defendant was entitled to credit against his federal sentence for all his presentence incarceration because defendant's sentences were concurrent and crediting only the state sentence would not reduce defendant's actual imprisonment); *Willis v. United States*, 438 F.2d 923, 925 (5th Cir. 1971) (reasoning that even though the State gave petitioner credit for his presentence custody, petitioner did not receive a benefit because his State sentence expired before his federal sentence).

*Spor v. Warden*, No. 1:16–05310, 2017 WL 1078188, at *5 (S.D. W. Va. Jan. 25, 2017). *Kayfez* and *Willis* presentence state custody credits function as exceptions to the general rule against "awarding credit for presentence time served against one sentence if that time already has been credited against another sentence." *Id.* (quoting *United States v. Mojabi*, 161 F. Supp. 2d 33, 36 (D. Mass. 2001)).

BOP Program Statement 5880.28 codifies the rules announced in *Kayfez* and *Willis*. *See Lemons v. Quintana*, No. 08–87, 2010 WL 4388066, at *9 n.12 (W.D. Pa. Oct. 29, 2010). Pursuant to *Kayfez* and Program Statement 5880.28, the BOP may grant prior custody credit, despite resulting in double credit toward a state sentence, when the following three conditions are met:

> [(1)] the **non-federal and federal sentences are concurrent**, [(2)] the Raw EFT[5] of the non-federal term is greater than the Raw EFT of the federal term, and . . . [(3)] the non-federal Raw EFT, after application of the **qualified** non-federal presentence time, is reduced to a date that is earlier than the federal Raw EFT . . . .

---

[5] "Raw EFT" refers to the "raw effective full term" of a sentence. *Spor*, 2017 WL 1078188, at *5. BOP Program Statement 5880.28 explains that,

> The Raw EFT for both a federal and non-federal sentence is determined by adding the total length of the sentence to be served to the beginning date of the sentence resulting in a full term date of sentence (**Raw EFT**) that does not include any time credit, e.g., presentence or prior custody time or good time.

Program Statement 5880.28 P. 1-14.

Program Statement 5880.28, P. 1-22B through 1-22C. Pursuant to *Willis* and Program Statement 5880.28, the BOP may grant prior custody credit when "[(1)] the federal and non-federal terms are concurrent[,] and [(2)] the Raw EFT of the non-federal term is equal to or less than Raw EFT of the federal sentence." *Id.* P. 1-22. With this framework in mind, the Court turns to the merits of Farrow's § 2241 Petition.

### III.  Analysis

After due consideration, the Court will grant in part and deny in part the Motion to Dismiss. While Farrow properly received credit against his state sentence for the time he spent in Allegheny County Jail between September 15, 2010 until June 17, 2013, the record indicates that a discrepancy may exist regarding the computation of Farrow's release date from federal prison.

### A.      The BOP Properly Calculated that Farrow's Time in Custody from September 15, 2010 to June 17, 2013 Counted Toward his State Sentence

Because the state court credited Farrow with 1007 days in custody from September 15, 2010 to June 17, 2013, the BOP properly determined that Farrow should not receive double credit against his federal sentence for that period of time.

Farrow first contends that the BOP must credit him with prior custody credit for time spent in U.S. Marshals custody on a writ of habeas corpus ad prosequendum from September 15, 2010 until June 17, 2013. Such argument forms the basis of his first and third claims for relief in his § 2241 Petition. The record before the Court shows that Farrow has received credit for this time on his state sentence and federal law prohibits him from receiving double credit.

Farrow argues, however, that his state lawyer "believed that since the state sentence was imposed after the federal sentence, concurrent to the federal sentence, and the state term granted credit for time served, that both sentences commenced on September 15, 2010." (Opp'n 2, ECF No. 17.) Farrow claims his state lawyer "led [Farrow] to believe . . . that under the terms of his

8

state sentence he would serve 10 additional months of incarceration." (*Id.*)  Unfortunately for Farrow, his state attorney's belief on how the sentences might run does not control how the BOP calculates his federal sentence.[6]  Case law and § 3585(a) make clear that a federal sentence does not commence before it is imposed.  Moreover, the relevant statutes dictate that Farrow should not receive double credit for this time in custody, which has already counted toward his state sentence.  The Court will dismiss Claim One and Claim Three.

### B.   The BOP Properly Calculated that Eight Months of Farrow's Sentence Run Concurrently with his State Sentence but a Discrepancy Exists as to Farrow's Projected Release Date

Farrow contends in his second claim that the BOP has not properly run eight months of his federal sentence concurrent with his state sentence.  Records show, however, that the BOP commenced Farrow's federal sentence on July 8, 2017, exactly eight months prior to his parole from state prison on March 7, 2018, to account for the concurrent portion of his federal sentence. (Mem. Supp. Resp't's Mot. Dismiss Ex. 1, ECF No. 16–1.)

There exists a discrepancy, however, in the records before the Court regarding Farrow's projected release date.  The United States notes that the Sentencing Court imposed on Farrow a total term of 70 months' imprisonment, with 8 months to be served concurrent to his state sentence.  The United States then contends that "the BOP began [Farrow's] 62-month consecutive portion of his sentence on March 7, 2018, the date he was paroled from Pennsylvania, and arrived at a full term release date of June 10, 2023," citing Exhibit 1 attached

---

[6] The United States Court of Appeals for the Fourth Circuit's recent decision in *Mangum v. Hallembaek* does not change this analysis. 910 F.3d 770 (4th Cir. 2018).  In that case, the Fourth Circuit remarked that even though a state court's sentencing preference does not bind the BOP in a *nunc pro tunc* analysis, the BOP should give a state court's statement that the sentences should run concurrently significant weight. *Mangum*, 910 F.3d at 778.  But *Mangum* speaks to what the BOP should consider when faced with silence from the federal sentencing court as to whether a federal sentence will run consecutively or concurrently.  In this case, the district court in Pennsylvania articulated in detail which portion of Farrow's sentence would run consecutively or concurrently.

to its Memorandum  (Mem. Supp. Resp't's Mot. Dismiss 8, ECF No. 16.)  "BOP then subtracted 314 days of good conduct time that [Farrow] is projected to earn on his full aggregate 70-month sentence.  This results in a projected release date of July 31, 2022."  (*Id.*)  But the United States' calculation does not align with the dates shown in Exhibit 1.  (Ex. 1, ECF No. 16–1.)  Exhibit 1, which contains Inmate Data for Farrow as of July 23, 2020, states that Farrow's full term release date is May 7, 2023, and his statutory projected release date is June 27, 2022.  (*Id.*)  The Court cannot find where in Exhibit 1 the BOP lists Farrow's projected release date as July 31, 2022 and his full term release date as June 10, 2023.

The Parties do not explain this one-month discrepancy in Farrow's release dates.  As a result, the Court will grant in part and deny in part the Motion to Dismiss without prejudice as to Claim Two.  The United States may refile a renewed Motion to Dismiss within 30 days of the date of this Memorandum Opinion to specifically address the computation of Farrow's release date from federal prison.

### IV.  Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the Motion to Dismiss.  (ECF No. 15.)

Date:  Feb. 11, 2021
Richmond, Virginia

_____
M. Hannah Lauck
United States District Judge